United States District Court
Southern District of Texas
**ENTERED**
December 05, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| AEROSPACE OPERATING ASSOCIATES, L.P., | § § § § | |
| Plaintiff, | § | CIVIL ACTION NO. H-23-1567 |
| v. | § § | |
| CITY OF HOUSTON, TEXAS, | § § | |
| Defendant. | § § § | |

**MEMORANDUM AND OPINION**

**I.  Background**

As rental disputes involving commercial lease property go, this one should be plain vanilla. There is a lessor, the City of Houston. There is a commercial real estate ground lease. There is a lessee, a private company, Aerospace Operating Associates, Limited Partnership. There is no dispute over anything but money.

The real property at issue was the subject of a 1987 ground lease between the City and Grumman Aerospace Corporation. (Docket Entry No. 12 at ¶ 1). Grumman assigned the lease to Ellington Field in 1989. (*Id.* at ¶ 15). In 2004, Aerospace Operating Associates became the sixth assignee. (*Id.* at ¶ 20). The property is near Ellington Field and Ellington Airport, but neither the leased real property nor the building on it is used for airport operations. Indeed, the Ground Lease specified that the leased premises are for "non-aeronautical purposes," allowing for "any other lawful use" (excepting certain prohibited uses not at issue here). (Docket Entry No. 12-18 at 17, 26). The Lease also specified that the ground lessee could assign the Ground Lease, or any part of it, to a third party, without the City's consent. (Docket Entry No. 12 at ¶ 12).

The current assignee of the Ground Lease, Aerospace Operating, owns the office building on the leased land. (*Id.* at ¶ 27). Aerospace rents space in the building to a number of tenants, none involved in airport operations. (*Id.*). Aerospace had agreed to sell its interest in the leased real property to a third party, for over $7 million. (Docket Entry No. 12-21 at 3). The sales agreement required the City to issue an estoppel certificate, similar to those the City had routinely issued in the past. (Docket Entry No. 12 at ¶ 31). The City refused, instead claiming that it was owed more rent. (*Id.* at ¶ 37).

The basis of the City's position is not in any prior communication with Aerospace or any provision in the City's lease agreement with Aerospace. Instead, the City claims that years earlier, when Grumman was the lessee, the City discounted Grumman's rent as an incentive for it to develop a large aeronautical facility at Ellington Airport. (Docket Entry No. 23 at 9). Grumman did not do so. Nonetheless, the City did not seek a rent increase from Grumman during the years that it and subsequent lessees leased the property from the City—until Aerospace sought to sell its leasehold interest. Only then did the City demand more rent and find that Aerospace was in default under the lease. (Docket Entry No. 12 at ¶ 37). Without the City's estoppel certificate, Aerospace lost the $7.2 million opportunity to sell to the third party. (*Id.* at ¶ 39).

Aerospace sued the City in state court, seeing a declaratory judgment that it is not in default and is paying the correct amount of rent. (Docket Entry No. 1-2 at 19–20). Aerospace also asserted a promissory estoppel claim that the City cannot suddenly change the long-standing rental amount and hold Aerospace in default. (*Id.* at 22–23). The City of Houston removed on the basis of federal question jurisdiction, citing the prior bankruptcy plan. (Docket Entry No. 1). Aerospace did not contest the removal and alleges in its amended complaint that this federal court has

2

jurisdiction "under 28 U.S.C. § 1331 because [Aerospace] seeks declaratory relief regarding disputed title to assets of an estate discharged in bankruptcy." (Docket Entry No. 12 at ¶ 7).

The City filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6), asserting governmental immunity, mootness, and failure to state a claim. (Docket Entry No. 15). That motion is pending. Before ruling on the motion, the court ordered the City to show cause why federal jurisdiction is present. (Docket Entry No. 22). The City submitted a brief in October 2023, (Docket Entry No. 23), and the court heard argument on the jurisdictional issue in November 2023, (Docket Entry No. 26).

Based on the briefing, oral arguments, and the applicable law, the court finds that there is no federal question jurisdiction. The case is accordingly remanded. The reasons are set out below.

**II.     The Legal Standard**

Federal court jurisdiction is limited by the Constitution and federal statutes. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136–137, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) ("The jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but also by Acts of Congress.")). Without subject-matter jurisdiction, a federal court simply has no authority to decide the case. Because the removing party is the one invoking federal jurisdiction, it has the burden of proving that federal jurisdiction is present. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988), *appeal after remand,* 915 F.2d 965 (5th Cir. 1990), *aff'd,* 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992)); *Delgado v. Shell Oil Co.*, 231 F.3d 165, 178 n.25 (5th Cir. 2000); *see also Coury v. Prot*, 85 F.3d 244, 248 (5th Cir.

1996) ("[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court.").

To determine whether federal removal jurisdiction is present, the court looks to the record in the state court at the time of removal. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). As a general matter, pleading amendments after removal can neither create federal jurisdiction that did not exist when the action was removed nor strip federal jurisdiction that did exist. *Hazel Bishop, Inc. v. Perfemme, Inc.*, 314 F.2d 399 (2d Cir. 1963) ("A subsequent amendment to the complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction.") (citing *Westmoreland Hosp. Ass'n v. Blue Cross of W. Penn.*, 605 F.2d 119, 123 (3d Cir. 1979), *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980)). Because removal jurisdiction raises significant federalism concerns, *Beiser v. Weyler*, 284 F.3d 665, 672 (5th Cir. 2002), any "ambiguities are to be construed against removal." *Manguno*, 276 F.3d at 723; *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

Whether a civil action presents a federal question depends on the complaint allegations. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Federal question jurisdiction exists "only when the plaintiffs well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). "To satisfy the rule, the plaintiff's well-pleaded complaint must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed." *Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Dep't of Envtl. Mgmt.*, 585 F.3d 42, 48 (1st Cir.

2009) (citing *Louisville & Nashville R.R. Co.*, 211 U.S. at 152, 29 S.Ct. 42 and *W. 14th St. Comm'l Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 193 (2d Cir. 1987)).  A federal court may exercise jurisdiction over a state-law cause of action with an embedded federal issue only when: "(1) resolving [the] federal issue is necessary to the resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 395 (5th Cir. 2015) (quoting reference omitted).  If the complaint raises no issue of federal law, either explicitly or embedded, federal question jurisdiction is lacking.  *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000) (citing *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

      The Declaratory Judgment Act, 28 U.S.C. § 2201, is "procedural only" and does not expand the jurisdiction of the federal courts.  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 15 (1983) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)).  When federal question jurisdiction is premised on a declaratory judgment claim, jurisdiction is lacking "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action." *Id.* at 16 (quoting 10A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2767, at 744–45 (2d ed. 1983)).  "A plaintiff cannot evade the well-pleaded complaint rule by using the declaratory judgment remedy to recast what are in essence merely anticipated or potential federal defenses as affirmative claims for relief under federal law." *La. Indep. Pharmacies Ass'n v. Express Scripts, Inc.*, 41 F.4th 473, 478–79 (5th Cir. 2022) (quoting reference omitted).

**III.    Analysis**

Both parties argue that federal question jurisdiction is present because Aerospace seeks a declaratory judgment that requires interpreting the 2002 bankruptcy order confirming the plan issued in the bankruptcy of a prior lessee, Rosche One and Rosche Aerospace. (Docket Entry No. 23). Specifically, Aerospace seeks a declaratory judgment that "[t]he Ground Lease passed through the Rosche One and Rosche Aerospace bankruptcy free and clear of all liens, including the Deed of Trust, or, alternatively, the Deed of Trust is no longer operative." (Docket Entry No. 12 at ¶ 42).

In the City's words, the plan that the bankruptcy court confirmed years ago is "as clear as mud" on whether the City can increase the rent it charges for the ground lease. The relevance, much less import, of the plan on Aerospace's claims or the City's response is no clearer. Aerospace's counsel acknowledged at the jurisdictional hearing that he "do[es]n't actually understand why [the bankruptcy issue] is important to the City." Aerospace explained that it sought the declaratory judgment as to the bankruptcy court's 2002 order merely because the City had indicated, before the lawsuit, that it believed the issue was important. For its part, the City insists that the issue is "more than a defense," but it has been unable to articulate what the "more" is. Instead, the City asserts that it is Aerospace's burden to "articulate [] what they're seeking here."

The problem is that it is the City's burden to show that Aerospace's well-pleaded complaint contains an embedded question of federal law that is "both substantial and disputed." The parties confess that they do not know what the bankruptcy plan has to do with Aerospace's claims; they simply assert that there may be a need to interpret that plan to determine the current rent dispute. It takes a substantial federal question to transform what the parties admit is a state-law rent dispute

6

into a federal case. The only plausible explanation the parties have suggested is that the bankruptcy plan language might (somehow) affect the amount of rent that Aerospace owes the City under the lease. If that is the case, then Aerospace's declaratory judgment claim recasts an "anticipated or potential federal defense[] as [an] affirmative claim for relief under federal law." *Express Scripts*, 41 F.4th 473, 478–79. That is not enough for federal question jurisdiction. *See Fabrique, Inc. v. Corman*, 813 F.2d 725, 726 (5th Cir. 1987).

## IV. Conclusion

Federal question jurisdiction is lacking. The case will be remanded to state court by separate order.

SIGNED on December 5, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge